It's 4-0-9-0-7-3-2 for the Appellant Kelly E. Gordon for the Appellate Donald Schuring. Ms. Gordon. May it please the Court, Counsel, my name is Kelly Gordon and I represent the Petitioner Appellant Dwayne McIntyre.  The first one is whether or not the trial court was correct in holding that the Broadway property in Quincy, Illinois was marital property. The second issue is whether the trial court erred in determining whether the increase in my client's non-marital stock in a corporation was marital property. And finally, whether the trial court correctly found my client Dwayne McIntyre's net income for child support purposes. A brief summary of the facts. Dwayne and Ellen McIntyre were married on May 9, 1998. The couple had two children, twins, born on October 19, 1999. Prior to the marriage, Dwayne and Ellen's father, Dr. Crossland, entered into a business agreement prior to the marriage. This agreement entailed getting a Fazoli's restaurant to Quincy, Illinois. Dr. Crossland purchased the land upon which the Fazoli's restaurant would sit. That is the Broadway property in question. The corporation then had shares of stock issued to both my client and Dr. Crossland in equal shares. The Fazoli's restaurant went up and was established on the Broadway property. After that, the parties were married. In 2001, Dr. Crossland and Dwayne McIntyre decided that it would be best for Dr. Crossland to no longer be a part of that. Dr. Crossland was a doctor by trade, and that's what he wanted to focus on, and my client was the one running the Fazoli's restaurant. Therefore, they decided that the property on Broadway was worth approximately $625,000. Dwayne and Dr. Crossland entered into an agreement where he would pay Dr. Crossland that amount. Shortly thereafter, my client went and received financing from First Federal to pay off Dr. Crossland. When he received the financing... That happened before the stock was, I guess, retired, if that's the correct word, for the doctor, therefore giving 100% of the stock ownership to your client? To the exact time. I know they were happening at the same time because Dr. Crossland... Does it really make any difference? That's not really an issue? I do not believe it is. Okay. I'm sorry to interrupt. That's okay. Thereafter, he got financing through First Federal. When he went to get the financing, he did not put down a down payment. Instead, he used the property itself that the Fazoli's restaurant sits on. He also gave an assignment of the rents that the property would receive from the Fazoli's restaurant corporation, and also a security interest in other property that C&M Pasta owned. Finally, he gave a million dollar life insurance policy with the bank as the beneficiary. Therefore, no marital property was used during the financing of that Broadway property. With regards to the stock, Duane and Dr. Crossland entered into an agreement where the stock was worth approximately... His share was worth approximately $250,000. And the corporation has been paying that back, whereas at the time of trial, there is about $160,000 left of that money still owed to Dr. Crossland. And Dr. Crossland holds the note for that stock. With regards to the first issue, whether or not the trial court erred in finding that the Broadway property was marital, initially the trial court found that it was non-marital. Counsel, just really to cut to the chase on that, isn't that something that was agreed to by your client? No, Your Honor, it was not. There was, as counsel I know will bring up, there was interrogatories that were signed by my client. The Broadway property was not listed in that. There was also a pre-trial memorandum where Mr. McIntyre's counsel listed the property as marital by mistake. And in the closing argument as well, he said it was marital. And in the Herman V. Power maintenance case decided by this court last year in 2009, I believe it was Justice Appleton who found that just because counsel makes a mistake in their closing argument, that doesn't necessarily constitute a judicial admission. This is more than that. It was a mistake in discovery, a mistake in closing argument. Wasn't there a mistake on even a motion to reconsider? No, I don't believe there was a mistake on the motion to reconsider. That's where it came to light. This isn't a matter of evidence, though, counsel. This is what your position is. You can't change positions. You're essentially asking this court to reverse the trial court based on an argument the trial court never heard. Isn't that right? No, Your Honor. I think the trial court actually did hear the arguments, heard the facts that made up the arguments, and the trial court initially found that, in fact, that property was non-marital. The reason it reversed itself on the motion to reconsider was because of the Schmidt case. And the trial court, for example, we also said in the pre-trial memorandum that all of the stock was non-marital. And the trial court found, we think erroneously, that part of that was marital. Well, the bottom line, counsel, is you've changed position from the position at the trial court. As I said, this isn't a matter of evidence. It's a matter of a changed position and where you have either invited or concurred in the position that this was a marital property at the trial level. And I don't see how this court is going to permit you to change it on appeal. It's an evidentiary matter, counsel, but you aren't permitted to argue inconsistent matters at appeal with your position at trial. But I think our position at trial when it started, and I think to conform the facts to or conform the argument to what the facts were at trial, even the trial court saw initially that it was non-marital property. And like I said, only reversed because of Schmidt. I'm not so sure that's the case because I thought maybe the trial judge looked at the transcript after the trial and after the motion to reconsider was filed. Because when you look at the transcript of the closing arguments, Mr. Schnack says this is clearly marital property. Didn't make an argument. How does anybody even know, how does the other side know to put on evidence concerning that when there's a concession in discovery, at trial, and in closing argument? Well, and again, I think that the facts that came out and even counsel did put on evidence, evidence that he could with regards to the property. He went through and tried to get from Duane where the down payment, for example, came from to make a determination of whether or not there was going to be contribution or reimbursement of the non-marital asset. And I think that in, I believe that in the trial court, when the trial court heard the evidence and saw that what had occurred with the property and made that finding that it was marital because of the Schmidt case. We don't believe that the Schmidt case is applicable to the case at bar because in that case the owner of the property bought non-marital property, bought additional property, through retained earnings. And that's not what happened in this case. I thought the trial judge applied Schmidt to the second issue, which is the increase in value of the scene of stock. It kind of looked at it in both ways. But when it looked at it in Schmidt, I mean in the first argument, and also with Lundell, that the retained earnings were being used to purchase additional property. And then that's where that retained earnings can be marital. And that's what Schmidt and Lundell were saying. So you're saying the trial court used the Schmidt case to determine that the Broadway property was marital? Yes. And the trial court didn't use the Schmidt case, or maybe did both, regarding the corporation? I think it did both. I haven't looked back, but I think it did both. Because Schmidt and Lundell came out about that same time. Both of those cases were talking about retained earnings and how to apply those retained earnings, whether or not they were marital asset versus non-marital. But there were no retained earnings in our case. No evidence of it anyway. I'm sorry? There was no evidence of any retained earnings. Correct. Those were not brought up in this case at all. And briefly with regards to that, I think the Hero case and the Eddy case are directly on point for that first issue if the court gets over the, or if I could prevail on the fact that even though those statements were made, I think the Hero and the Eddy case clearly would find, because it was assets that were derived from the non-marital assets were in exchange, which is what Hero and Eddy both said. With Eddy, with regards to the McDonald's, the husband and his brother inherited property. They took that property, got financing on the property, and purchased the three McDonald's. They then used the income from the three McDonald's to pay off the loan that was secured with the non-marital property. I think that's exactly what happened in this case, in that it should remain non-marital property. With regard to the stock, both Duane and Dr. Crossland owned 50% of the stock. In 2001, when Dr. Crossland was wanting to no longer have a part in the business, they came up with the number of $250,000 for his share of the stock. Thereafter, they entered into an agreement where his stock would be retired or redeemed, and based upon that, he would then get money on a monthly basis fixed to prime rate. And the trial court found on that issue as well, initially, that it was non-marital, and then after the motion reconsidered, came back and found that it was marital. In this issue, Blunda, which was from the Second District in 1998, I think is very instructive in this case, and the facts are very similar. In Blunda, parties were married in 1966. In 1992, the wife received from her father 4,200 shares of corporate stock. At that same time, her two brothers also received 4,200 shares of that stock. About a month later, the one brother they decided wasn't fit for the business, so they bought out his 4,200 shares of stock. When doing that, the wife signed part of the note on that. Then later on, when the father was about to die, he redeemed his 1,400 shares of stock. Similar in this case, the wife in Blunda didn't do anything to increase her shares or ownership of the stock. Instead, that stock was redeemed. In Blunda, the court found that that increase was non-marital. She didn't do anything to increase her stock. Instead, the stock was merely redeemed. And in the trial court, I'm sorry, the appellate court stated, no personal assets of the estate were expended. There was nothing to reimburse, and there was no proof of contribution from the marital estate. That's true in this case. There was no marital assets that were used to pay Dr. Crossland. Instead, he was paying it out of the corporation. Like in Blunda, they were paying out of the corporation. The husband in Blunda tried to argue that he should get a portion of that because she signed a loan and could be personally liable for that. And the trial court found that there was no contribution or reimbursement because she never actually paid anything out of the marital assets for that stock. Based on that, we believe that that increase, that he did not exert any effort to increase his ownership in that. It was just a mere redemption of the stock, and that increase should still be held to be non-marital and not marital. That gets me to the next question. Assuming the trial court misclassified it and it should have been classified as non-marital, then they argued, didn't they, that the marital estate was entitled to reimbursement. And I don't think it would be. When we look at Blunda, in Blunda they found that there was no reimbursement because the husband was not able to prove by clear and convincing evidence that any of the marital assets went in to pay for those loans. And I think the same would hold true in this case. Right. I understand there were no physical assets, no monetary assets put in. But I thought that their argument was that the increase in value was due to the personal efforts of the husband. And the personal effort of the husband didn't change his ownership in the company. He was doing the same thing that he had been doing, like in Blunda. He had been doing the same thing. He didn't do anything different to increase his effort. His increase in the ownership merely went up because stocks were redeemed, or shares of stock were redeemed. He didn't exert any additional personal effort for that to occur. And because of that... So the cases say he has to have additional effort? It can't just be the same effort? Well, in Blunda it doesn't talk about what the effort is, the personal effort is. But if you look at what his effort is, it's remained constant. And then as the shares were redeemed and his ownership interest went up, the effort that he put in, the increase, excuse me, is not attributable to what his effort was because his effort has remained constant throughout his working at Fazoli's. Who has the burden on this issue? Well, I think the initial burden of whether something is marital or non-marital, obviously anything purchased during the marriage is marital. No, I mean the burden on the reimbursement. In the Blunda case, the Blunda case specifically says that it was up to the husband to prove by clear and convincing evidence. He was seeking reimbursement? Correct. So under your theory then here it would be the wife? Correct. And my final issue is with regards to the calculation of child support. The court, Ellen had an expert testify to certain items and expenses that were being paid out of the corporation. Those two things that the court focused on were health insurance and life insurance. The court, the expert that Ellen used in SNESBIT found that the life insurance that was being paid for Ellen was $6,504 per year. The health insurance you mean? Oh, I'm sorry, yes, excuse me, the health insurance. And since the corporation would no longer be paying that, then that would be money that would go to Duane. However, just because the corporation may not be paying $6,504 does not necessarily mean that dollar for dollar that money is going to go into his pocket. Instead there could be tax advantages for him paying out that insurance, which he's not going to have now. I believe the court erred in finding a dollar for dollar reduction for the $6,504. Likewise, with the life insurance premiums, the corporation was paying the life insurance premiums. As you recall, the life insurance that he had a million dollar policy on himself was being used to secure the Broadway property. So he was using that income, the $1,615, for the business expense to pay on the life insurance, which was actually a corporate expense because that's what was being used to secure the property. And I believe that the court erred in attributing the $1,615 to him also as part of his income. I don't understand, how does the court consider an expense income? For some reason I'm having a hard time wrapping my brain around that. Well, I think what the court was doing was it was saying that there was an expense. The corporation had an expense of $6,504. The counsel argued, and Ms. Nesbitt argued that, or stated that, because the corporation was no longer going to be paying $6,504, that expense is no longer there. So now all of that was available to be distributed. Same way with the $1,600? It's the same argument? Correct. Let me ask you this, though. From my reading of the record, it looked to me like what the court did in its order was say, I'm finding that gross income consists of this, this, this, and this. And I'm ordering the attorneys to come back to me with a net income figure. So you make the calculations, the deductions, what should be deducted. I couldn't find anywhere in the record where anybody ever made the argument to the trial court that that $1,600 was there to secure a debt, or later the court issued an order that said he had to keep that life insurance in effect to secure the payment of child support and college expenses. But I never saw anywhere where that argument was made to the trial court, and therefore he should get a deduction off of his gross income for those amounts. The trial court left it up to the attorneys to figure it out. Your Honor, I'd have to check the record again. It was my understanding, but I am recalling, as you know, there were several findings and supplemental findings and amended findings, and at some point in the early stages I believe that the trial court found that those two numbers should be added back in. Into gross income. As gross. Right. And then said to the attorneys, you guys make the 505 deductions and come back to me with a net figure. And my assumption is that's what happened. The attorneys came back and said, here's the net figure. And they didn't make a deduction. I didn't see anywhere where anybody argued or came back in and said, we can't agree on what the appropriate deductions are. We think he should get a deduction for the life insurance because it's securing a debt on the business. Well, and I'm not sure if that, you know, I wasn't the counsel, so I'm not sure what those conversations were with the judge. But even if it wasn't considered a business expense, even in In Remarriage of Heil, which is a Fifth District 1992 case, even in that case when they said it was part of the business expense, it should be part of the deduction. And as for the court making the initial finding that those two should be included in gross income, I would not be able to stand here and tell you today what was going through the minds of the prior attorneys of why those two things weren't deducted. Our argument is simply that those should not have been included at all in the gross income. Thank you. Thank you. Mr. Shurey? May it please the Court, Mr. Gordon. The trial in this case and the litigation in this case went over some period of time, and Judge Bailey, as the trial judge, there was approximately four days of hearing that we had in this case. And as the Court can see from the record in the memorandum of findings, Judge Bailey entered a 16-page memorandum in regards to what his findings were. He had the opportunity to obviously hear the testimony and look at the credibility of the witnesses. And even after the first judgment was entered, there was a motion to reconsider filed, and he did, in fact, review the testimony of the trial and came back with a decision where, again, he found in 16 pages issues of fact that he was contributing to his final judgment. In regards to the, I guess, the last issue raised by Ms. Gordon in regards to the income, I was a trial attorney in this matter and very familiar with the facts and the sequence of how the evidence was presented and what we did. First of all, Judge Bailey, in reviewing the evidence, gave much credence to the testimony of Ms. Rosemary Nesbitt, who was the CPA that examined the documents, the financial statements of Mr. McIntyre and was of the opinion that the records were not complete, not adequately kept, and there was many issues in regards to, that was presented in regards to Mr. McIntyre's true income. There was such things as the insurance payments, and we believe that that is not to be considered as a necessary business expense and that the court ordered, in fact, there was two policies, there was not just one, there was two life insurance policies, but that was ordered by Mr. McIntyre to maintain those for the security, for the child support, and for the maintenance. Why isn't that an expense? I think it's a dual. It was an expense that he had to maintain, which I think would be income to him as opposed to the corporation paying for it because it was an item that the court ordered him to maintain for the security of the child support and the maintenance. Why wouldn't that then become, I mean, I just think nobody argued it, maybe I'm wrong, but why wouldn't that, if you were looking at this brand new and you didn't have the trial record to worry about, isn't it a good argument to say if he's ordered to secure his child support obligation by maintaining life insurance, isn't he entitled to a deduction from his gross income for those amounts he's expending? Well, again, I think if we look at Judge Bailey's decision at that time and that he found that that was monies basically that the corporation was paying, that would be an expense that he would have to incur. I don't believe that is a legitimate expense that he can deduct from his gross income to arrive at a net income. Ordinarily, I agree with you that life insurance, if you're paying for your own personal life insurance and a corporation is picking it up, it's income to you. I agree with that. And I agree that normally a regular person who's employed doesn't get to deduct life insurance to get to net income. What I'm saying is in this case, though, there were two things. One, he was using the life insurance as security for business debt. And the other one was he was required to maintain it to secure his child support and college expenses. So, yes, it would get included in income, but on the other hand, wouldn't he be entitled to a deduction because those amounts were expended for the business debt and for child support? Well, again, I think I don't know of any cases at all necessarily that that expense would be able to be deducted from his gross income because of the fact that it was an expense that he had to secure the payment of the child support and maintenance. And I realize the other edge of the sword was that he had to maintain that on this loan that he got. So, again, I think adding that back into his gross income along with the medical insurance expense and the other expenses. You know, the court did not take all of the expenses at Ms. Nesbitt in her forensic examination of the records and add back into it. She went through very carefully, and in our exhibit number 13 that was submitted at the trial, she went through his income and went through these expenses and came up with an amount that we constructively, she was entitled to. Mr. Shearing, can I ask you one more question? Since you were there in the trial court, am I correct in the way I was reading Judge Bailey's order that he basically said, here's what I think gross income is, and you attorneys, you go figure out what 505 deductions he's entitled to and come back to me with the net income figure? In fact, he went one step further than that. He told us to do it, but to do it by way of Ms. Nesbitt. She was the CPA and she was the one that went and figured what his deductions would be, figured his tax consequences based upon him claiming the two children and himself. And that was at another hearing where we had a hearing specifically on that issue, and she testified in regards to how she came up with the amount of what his net income would be, taking into consideration his taxes and other business expenses and figured even with the child support it should be based upon 28% of his net income. So that is what happened at the trial. Does that answer your question? Okay. So, in regards to the income, we believe that the decision of Judge Smith and the additions that he made to his income, but his careful consideration of things that he did not include that we asked him to. So it wasn't like he took all of Ms. Nesbitt's figures as to the personal expenses that were paid out and various other issues in regards to that. But we believe that the figure of his child support is in fact correct. And I think there's one thing also we always have to consider in any case like this where we have a situation where we have a corporation that is solely owned by one individual that controls many things. I mean, he controlled what he was being paid as far as his salary. He controlled as to what rent the corporation was paying to him. There was a formula initially, and that was changed a month after Mr. Smith's petition for dissolution of marriage where he reduced that. And in fact, in so doing, reduced the amount of his gross income. There was instances in regards to the personal expenses being paid out, the phone, car expense, the truck was being provided. So I think that is something also and is reflected in the memorandum of findings that Judge Bailey made in analyzing those things. So we think the court should not reverse the issue of the amount of his gross income. In regards to the Broadway property, I think there's really four what I had referred to as emissions in regards to that being a marital asset. The first one, and that was brought to the attention of Judge Bailey in the motion to reconsider, not the trial, because it was an answer to the interrogatory where he was asked to list any non-marital property and the real estate, commercial real estate was not listed. The second, in Adams County we have a hearing scheduling order that is completed in each dissolution case when the case is set for trial. And that requires a couple, really three things. First of all, the parties are obligated to identify the contested issues. And nowhere in any of the pretrials of Mr. McIntyre or Mrs. McIntyre was there any issue identified as being contested in regards to whether or not the commercial property was marital or non-marital. In the pretrial affidavit, which is a hearing scheduling order that requires both the petitioner and respondent to complete, you're asked to list the non-marital property. Mr. McIntyre did not list the commercial real estate as non-marital. And that was not only signed, in fact I don't believe it was signed by Mr. McIntyre. In our pretrial affidavit, we did not list the commercial property as non-marital. In fact, listed it as marital property. And I think what is probably as important, if not more important, is that in the hearing scheduling order, it states the pretrial affidavits, including any attachments, exhibits, shall be considered by the court at hearing unless an objection thereto is sustained prior to hearing. There was no objection filed by Mr. McIntyre. You know, we proceeded from day one, really up until we received notice of the appeal and the issues to be raised, that the commercial property was in fact marital. We have cited various arguments in our brief to support that the emissions are controlling and that relief should be denied. The second issue, the third issue I'd like to address would be the, and I would state that we have addressed the issue, the court finds that it is not controlling as to why we still think that the commercial property should be The last issue has to do with the stock. Mr. Shearing, would you concede that Judge Bailey misclassified the increase in value as marital property under 503A7? Shouldn't it have been classified as non-marital? And then you decide whether the marital estate is entitled to reimbursement. Well, you know, I think an argument can be made that it would be the stock of Dr. Crossland that was redeemed by the corporation could be classified as marital. Ms. Nesbitt testified that the reason that it was redeemed, and they hired Mike Bickhouse, an attorney in Quincy, to draw up those papers, was because the corporation had the ability, would be able to claim the interest as a deduction. Where if Mr. McIntyre purchased it just in his name alone, he would not have  But the practical effect of whatever happened, or however you did it, was that Mr. McIntyre ended up with 100 percent ownership of the company, of the restaurant. I guess what I'm getting at is so in the trial court, you argued that there was an increase in value of the stock.  In other words, this was a 503A7 issue and not a 503A8 issue. And Schmidt, the case that the trial court relied on, was a 503A8 case involving a distribution from the corporation, purchasing property. Okay, but then I think we get into the next step as far as the money is being paid for, even though it's being paid out of the corporation. Again, I think we have to look at the fact that Mr. McIntyre was the sole owner of the corporation, that he had complete control over the corporation, that his personal efforts contributed towards the corporation being able to pay that. So, you know, whether or not it's Where's the testimony that significant personal efforts on behalf of Mr. McIntyre caused a substantial appreciation in the value of the stock? In fact, where's the testimony that the stock appreciated in value? Well, again, I think the stock value that was of $250,000 that was established at the time that Mr. McIntyre, at the time the stock was redeemed by the corporation, established the value of that stock. In 2001? Yes. The divorce is in 2008, but where's the testimony that established the value of the corporation in 1995? If you want to say there was an appreciation in value, don't you have to compare two numbers? Well, I think we have an arm's length transaction where Mr. McIntyre is purchasing the stock from him. I'll give you that, and the trial court accepted that, but that was a 2001 value. Rosemary Nesbitt never computed the value of the corporation in her own method. No. Did she ever testify to what the value of the corporation was to begin with? No. So how can anybody determine whether there was a significant appreciation in the value of the corporation? Again, because the only thing that would be would be the sale price. But compared to what? Well, I guess in compared to the initial contribution, which was $30,000. Well, that's different than the value of the corporation. Right. But I think as far as the stock and what the value was, it was established just in light of the arm's length transaction of what the parties agreed that it would be. Right. Even if I agree with you that the stock, Dr. Crosland's stock, was worth $250,000, what are we comparing it to? That's my question. Rosemary Nesbitt never testified to what the initial valuation of the corporation was. Right. No, we did not do an evaluation of the corporation. But again, I mean, that's the only answer I have would be the value that was established by the parties when the stock was redeemed by the corporation was $250,000. And the fact that there was a debt of, I think at that time, $165,000 that was still remaining that was owed by the corporation. And I think that's a distinction in the Blunda case, that in that case there wasn't much of anything that was still owed. And also in that case, it wasn't an issue as far as the spouse working in the business. But the reason that was an issue in Blunda about what was owed and what wasn't was because the wife personally guaranteed that debt of the corporation. And in this case, neither Mr. McIntyre nor Mrs. McIntyre guaranteed the debt to Dr. Crosland. So if this always goes out of business, he's out of luck, isn't he? Yes, he is. There's no question that if that would happen, he would be out of business. I'd also like to comment on the two cases, one being the Eddy case and the other case being the Roy case, I believe. I think both of those can be distinguished in that in both of those cases, the spouse was not actively involved in either of the businesses. In the first case, the spouse was, in fact, the attorney was not actively involved, so there wasn't any issue at that point in time as to the personal effort of the spouse. In the Eddy case, the spouse also was not involved in that. There were three McDonald's restaurants where the income was being derived from. So I think those two cases can be distinguished. And again, I think, and we cited to the court the Schmidt case and the Lundo case, which I think are very close on point in the fact situation of this case. Except that they're both 503A8 cases involving a distribution. Okay, I'm talking about also the commercial property, I think, relative to that also. That's all I have unless there's any other questions. Seeing none, thank you. Rebuttal, please. With regards to the child support, I'll do that issue first and the income.  There's the fact that that money is staying in the corporation and is being paid for the life insurance. And it shouldn't be included. That should not have been a dollar for dollar increase to my client's income because the corporation is paying it. The corporation has a reason that they're paying it. It's securing a debt. Then the next step to that is if it is considered income, then it should still be deducted because it's a business expense to keep the business going. Deducted from what? From its gross. Is it paid for by the corporation? Yes. Both the health insurance and the life insurance? Yes. And I didn't mean to interrupt you. No, no, go ahead. You're still going to ask a question. And what Ms. Nesbitt stated in her testimony was both of those items shouldn't be being paid by the corporation, so that income should flow through to DuWayne, and that should be included as part of his gross income. I don't understand it. If it flows through as part of the gross income, then you've got to pay for insurance. Why isn't that just a wash? He's not paying for the health insurance anymore, right? Right. The $6,504 he is not paying for. But he is still paying for the life insurance. Yes and no. I don't think even if the corporation was not paying the $6,504, that does not necessarily mean that the $6,504 are in DuWayne's pocket. That's the corporation. And the corporation, albeit it's him, can decide to keep that money for other expenses. But isn't that the key that Judge Bailey felt since he was now the 100% shareholder, he had control over whether that money got paid out to himself or not. He could decide to pay it to himself since he didn't have that expense anymore. And if he chose not to, that's his decision. And I think that could be what he thought. It could also be, however, that he keep that in retained earnings. He could have kept that $6,004 in retained earnings. And given the Lundahl case, Lundahl just talked about distribution property. Lundahl didn't get into whether or not retained earnings. And I think that opens the door for a whole line of cases that may soon be up here of whether or not retained earnings can be used to determine child support. So if DuWayne chose to keep the $6,504 in his retained earnings since he's the sole owner now of the corporation, whether or not that money can be considered as part of child support. Well, the trend of the cases seems to be, at least in sub-S corporations, if they're not being used for a dividend or for expenses of the corporation and there's so control over whether those retained earnings get paid out, it looks to me like the trend of the cases says that is used for child support. And I think that's where potentially maybe Lundahl is headed, although Lundahl didn't specifically talk about child support in that case. Of course, in joint, in the third district, there the fellow was a minority shareholder and didn't have control. Right. And so the retained earnings were not included in child support. Correct. With regards, again, to the first issue I brought up with regards to the Broadway property. Again, the pretrial memorandum, yes, it said that the Broadway property was marital. It also said that the corporation and the increase in stock, all of the corporation, was non-marital. And the court still went a different way on that. So I think just because the pretrial memorandum may say something one way doesn't necessarily mean that the trial court needs to find it in that way. And finally, with regards to the increase in his stock ownership, again, I don't believe that there were his personal efforts contributed to the increase in the value of his stock shares and said it was the redemption. Thank you. Thank you. The case is submitted and the court will stand in recess until further call.